IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**CLIFF W. DARNELL and**
**MARY B. DARNELL,**
    **Plaintiffs,**

v.                                            No. 1:21-cv-00125-JB-JHR

**ZIA TRUST, INC. and**
**DARRYL W. MILLET,**
    **Defendants.**

### FIRST AMENDED COMPLAINT FOR PROBATE FRAUD, BREACH OF FIDICUARY DUTY, DECEIT, COLLUSION

The Plaintiffs Cliff W. Darnell and Mary B. Darnell, by and through undersigned counsel, for their First Amended Complaint for Fraud, Breach of Fiduciary Duty, Collusion and Deceit state as follows:

### VENUE and JURISDICTION

1. Plaintiff Cliff W. Darnell is a resident of Garland County, Arkansas.

2. Plaintiff Mary B. Darnell is a resident of Maricopa County, Arizona.

3. Defendant Zia Trust, Inc. is a New Mexico for profit corporation with its principal place of business in Bernalillo County, New Mexico.

4. Defendant Darryl Millet is a resident of Bernalillo County, New Mexico.

5. Pursuant to 28 U.S.C. § 1332, this Court has original subject matter jurisdiction over the parties and the subject matter of this action because complete diversity exists between the Plaintiffs and the Defendants, and the Plaintiffs' claims exceed seventy-five thousand dollars ($75,000) excluding interest and costs.

## FACTS

6. Plaintiffs are siblings; their parents were Casey Darnell and Blair Darnell.

7. On July 19, 1982, Casey and Blair Darnell created the Clarence E. Darnell & Jane Blair Bunting Darnell Trust ("Darnell Trust"). The Darnell Trust was first amended on August 22, 1985; a Second Amendment was dated June 2, 1988.

8. A primary purpose expressed in the Darnell Trust was to pass the substantial real property and business holdings of Casey and Blair Darnell on to their children, which includes the two Plaintiffs and two of their siblings - Emily Darnell and Kristin Blair Darnell Schmitt.

9. A secondary purpose stated in the Darnell Trust was to establish that Darnell family members would control, through majority vote of a "family council," the decisions regarding all future uses of the real property.

10. The Darnell Trust (at Article IV) included express provisions for division of the Trust Estate upon the death of the first grantor. Section 4.1 required the Trustee to segregate and divide the Trust estate into three separate trusts, designated as Trust A-1 "the survivor's trust," Trust A-2 "the qualified terminable interest marital trust," and Trust B "the decedent's trust." Trust A-2 and Trust B were explicitly designated as <u>irrevocable</u> trusts.

11. Casey Darnell died August 10, 2001.

12. To effect the purposes of the Trust division, on July 14, 2004 Jane Blair Darnell executed a Co-Tenancy Agreement between the Trusts and a Warranty Deed, transferring one half of the Trust Estate real properties to each Trust A-1 and Trust B-2. The effect of this transfer was to make all real property transferred to Trust B-2 irrevocable.

13. The July 14, 2004 Co-Tenancy Agreement and Warranty Deed was drafted by Blair Darnell's legal counsel.

14. A map attached to the Co-Tenancy Agreement and Warranty Deed divided the total 16.77 acres of platted lands into the respective tracts possessed by each Trust A-1 and Trust B.

15. The property recognized as "Lot 2-A" became the revocable property of Trust A-1. The property recognized as "Lot 2-B" became the irrevocable property of Trust B.

16. Lot 2-A contained the residential home of Casey and Blair Darnell, and totaled approximately 2 acres of land.

17. Lot 2-B contained the remaining approximately 14.77 acres of land, upon which Casey Darnell's horse and ranch business conducted its affairs.

18. As of 2009, a considerable amount of outside land development interest had been directed toward the Darnell real property holdings in Albuquerque along the Rio Grande; various inquiries regarding sale of the property were received by the family.

19. On January 6, 2010, an involuntary conservatorship and guardianship proceeding was initiated, on an "emergency basis" by attorney Greg MacKenzie, Esq., D-202-PQ-2010-00003, concerning Blair Darnell. This was done without notice to Blair Darnell or either of the Plaintiffs.

20. On January 7, 2010, Orders and Acceptances were filed in the PQ-2010-00003 matter, appointing Decades, LLC as Temporary Guardian and Conservator.

21. On April 13, 2010, Darryl W. Millet was appointed as Conservator of Blair Darnell in the PQ-2010-00003 matter, based upon a determination by Dr. Swanda she was incompetent to handle her own financial affairs, meeting the definition of "incapacitated" as set forth in the Darnell Trust.

22. The result of the conservator-guardianship proceeding was that all Darnell family property, including property held in the Darnell Trust, allegedly became subject to the jurisdiction of the Second Judicial District Court of New Mexico.

23. When the PQ-2010-00003 involuntary conservatorship and guardianship proceeding was initiated on 1/6/2010, the Darnell's real property known as Lot 2-A and Lot 2-B was owned in fee without any debt encumbering the property.

24. On 7/15/2010, Defendant Darryl Millet filed a Request for Expedited Hearing and a Motion to Appoint Successor Trustees in which he requested that Zia Trust, Inc. be appointed as Successor Trustee "so that [Mr. Millet could] have the trustee's cooperation in obtaining a reverse mortgage to fund Blair's ever-increasing costs of care, and to satisfy the unpaid legal fees related to the guardianship/conservatorship. At hearing on his Motion, Mr. Millet stated he wanted "a Trustee [he] could work with."

25. On 8/2/2010, the Court appointed Zia Trust, Inc. as Successor Trustee of the Darnell Trust.

26. Ten days later, on 8/12/2010, Zia Trust, Inc. executed a Warranty Deed deeding "Lot 2" of the Darnell Trust property to Darryl W. Millet. (Exhibit 1).

27. One year later, on August 10, 2011, Zia Trust filed a second Warranty Deed (Exhibit 2), to correct the error of Jane Blair Darnell's name as it was spelled in the 8/10/2010 Warranty Deed.

28. Zia Trust did not at any time file an Acceptance as Successor Trustee in the PQ-2010-00003 matter.

29. Zia Trust did not have authority, under the express terms of the Darnell Trust, to deed out of the irrevocable Trust B the property recognized as "Lot 2-B."

30. At some point, Defendant Millet became Successor Trustee of the Darnell Trust, even though he was not a corporate entity - which was a requirement of Section 12.5 of the Darnell Trust.

31. As Trustee, Defendant Millet had a statutory obligation to the statutory beneficiaries, and a duty to fully represent to the Court all offers made for the Darnell Trust property, which he failed to do.

32. On June 25, 2013, an Order was entered in the PQ-2010-00003, permitting the Conservator Darryl Millet to sell the irrevocable property Lot 2-B to a Jay Rembe for a set sum of $1.545 million. The order further stated that Jay Rembe was to be given an option to purchase Lot 2-A for its appraised value at the time of sale, with the option exercisable only upon the death of Jane Blair Darnell.

33. On June 25, 2013, Blair Darnell was residing in the residential home situated on Lot 2-A.

34. Contrary to the express conditions of the Court's 6/25/2013 Order, Darryl Millet on 10/15/2013 sold BOTH Lot 2-A and Lot 2-B to Thomas L. Stromei, Trustee of the L. Stromei Trust, for the amount of $1,400,977.

35. On the same date, Mr. Stromei executed a Life Estate to Jane Blair Bunting Darnell.

36. Mr. Millet's sale of both properties was contrary to both the Court's 6/25/2013 Order and the express provisions of the Darnell Trust B, wherein the Lot 2-B was irrevocable Trust property.

37. Mr. Millet's sale of Lot 2-B was for more than $150,000 less than the Court-approved amount for the sale of the Lot, and was $300,000 less than a $1,700,000 offer Mr. Millet was aware of and did not inform the Court about.

38. Mr. Millet's sale of Lot 2-A was prior to Blair Darnell's death; there was no appraisal done for the sale of the tract and for all practical purposes Mr. Millet transferred a highly valuable tract of real property to Mr. Stromei for no consideration whatsoever.

39. Mr. Stromei later listed the property for $3,500,000 and ultimately sold the Darnell Trust property to the New Mexico State Game Commission in 2016 for $2.8 million.

40. Plaintiffs were unaware that Zia Trust had not accepted the designation of Successor Trustee and had not complied with NMSA 1978, § 46A-701(A)(1), until February 15, 2019, after Cliff W. Darnell had initiated a probate matter (D-202-PB-2018-00511) in the Second Judicial District Court, the purpose of which is to finalize and correct estate matters that Darryl Millet as Conservator failed to perform, and correct errors Mr. Millet made in executing his duties as Conservator.

41. One of the first actions in the PB-2018-00511 was a request for the Court to make a final determination of the meaning of certain key language in the Darnell Trust - language requiring non-family-member successor trustees to be "corporate trustees" and specifying all major trust asset decisions to be approved by majority vote of the family council – language that very likely had been breached during the guardianship case in which Darryl Millet served as Conservator.

42. After serving certain of the probate papers on Zia Trust as one of the parties involved with his mother's estate, Cliff Darnell received a letter from attorney David Grammer, on behalf of Zia Trust. (Exhibit 3 attached).

43. Mr. Grammer's letter - for the first time - made known to Cliff W. Darnell that *despite the wording of the 2010 Court Order,* Zia Trust *declined to act as successor Trustee, never accepted appointment as successor Trustee under the Darnell Trust as required by the New*

*Mexico Trust Code, Sec. 46A-7-701 NMSA, and never took possession of or administered any property of the Trust.*

44. Prior to the receipt of Mr. Grammer's 2/15/2019 letter, Plaintiffs were completely unaware that Zia Trust had never accepted appointment as corporate Trustee of the Darnell Trust, and for the first time became aware that Zia Trust transferred the Darnell Trust property to Darryl Millet as conservator without lawful authority.

45. It was only upon the receipt of Mr. Grammer's 2/15/2019 letter that Plaintiff Cliff Darnell discovered Zia Trust and Darryl Millet had transferred Darnell Trust property without legal authority, constituting probate fraud, and that Defendant Zia Trust had breached its fiduciary duties as corporate trustee, with the full knowledge and complicity of Defendant Millet.

46. The Darnell Trust expressly provided (Art. 13, §13.2) that "a Trustee shall be liable for such Trustee's own negligence or willful misconduct."

47. The Darnell Trust expressly designated individuals who were to serve as Trustees. Casey and Blair were initially-designated Trustees. In the event either was incapacitated, Cliff W. Darnell was to serve as Co-Trustee. In the event both Casey and Blair were incapacitated, Cliff W. Darnell and the NationsBank N.A. "shall serve as Co-Trustees."

48. The Darnell Trust expressly provided that upon the death or incapacity of both of the Grantors (Casey and Blair Darnell), a Trust Advisory Committee composed of the Grantor's children <u>shall be formed.</u> The Committee had the right to advise the Trustee on all matters concerning the Trust. The Trustee was to ("shall") "give due regard to such advice but for good cause may decline to act in accordance therewith."

49. Despite the requirement of this Section, neither Zia Trust nor Darryl Millet at any time discussed disposition of any Trust property (both revocable and irrevocable) with either of the Plaintiffs.

50. As Court-Appointed Conservator of Blair Darnell, Mr. Millet failed to dispose of all assets belonging Blair Darnell; in particular Mr. Millet failed to determine and transfer interests in a painting - "Madame X" by Antonio de la Gandara - that was owned by Blair Darnell.

51. The Madame X painting is, and has been, held by the Gibbs Gallery in Charleston, SC since before the D-202-PQ-2010-00003 matter was filed on 1/6/2010.

52. The Madame X painting was put on loan to the Gibbs Gallery by Blair Darnell in September 2008. (Exhibit 4).

53. At the time of the loan, only Blair Darnell was recognized as owner of the painting. In signing the loan agreement, Blair Darnell expressly warranted that she had full power and authority to make the loan.

54. After Jane Blair died in November 2015, Defendant Millet in February 2016 informed the Gibbs Gallery that Amy Bunting owned a one-half interest, and he backdated a lease agreement contract with the Gibbs Gallery by more than eight months, and added Amy Bunting as half owner. (Exhibit 5).

55. Mr. Millet's determination was ostensibly based upon an alleged discussion with the probate attorney who had handled the probate of the estate Blair and Amy's mother's, Ethel-Jane Westefeldt Bunting, who originally owned the painting.

56. The Madame X painting was not an asset of the Darnell Trust.

57. Mr. Millet did not have authority, as "Conservator for Jane Blair Bunting Darnell," to assign and one-half interest in the painting to Amy Bunting, which assignment was made three months after Jane Blair had died.

58. An affidavit of attorney Thomas Rutledge, who was Co-Personal Representative of the Estate of Ethel-Jane Westfeldt Bunting, filed in the D-202-PB-2018-00511 matter established that the painting was not part of Ethel-Jane Westfeldt Bunting's estate because it had been gifted prior to her death, and therefore Amy Bunting had no right to ownership in the painting.

59. Mr. Millet clouded title in the painting by informing the Gibbs Gallery and the Court that one-half interest in the painting was held by Amy Bunting, Blair Darnell's sister.

60. A dispute continues to exist with the Gibbs Gallery regarding ownership of the painting, and the Gibbs Gallery refuses to release the painting without Court order.

61. Plaintiffs ownership interest in the painting was materially affected by the actions of Defendant Millet, and Plaintiffs have incurred damages based upon his actions.

## COUNT I
## Probate Fraud

62. Plaintiffs incorporate the preceding paragraphs as if set forth herein in full.

63. As named beneficiaries of the Darnell Trust, Zia Trust and Mr. Millet owed a fiduciary duty to Blair & Casey Darnell, and to Plaintiffs, to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with the Uniform Trust Code, giving due regard to the beneficiaries' respective interests.

64. Section 45-1-106 of New Mexico's Probate Code provides in part: "If fraud has been perpetrated in connection with any proceeding or in any statement filed under the Probate

Code or if fraud is used to avoid or circumvent the provisions or purposes of the code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud including restitution from any person * * * benefiting from the fraud, whether innocent or not."

65. The Darnell Trust expressly provided (Art. 12, § 12.6) that "no designation or appointment of a corporate Trustee as Successor Trustee shall become effective until the corporate Trustee has formally accepted the designation or appointment." This section further provides that "Any corporate Successor Trustee will be allowed to review the accounts and circumstances of the account and be able to decline the designation or appointment."

66. Zia Trust did not comply with NMSA 1978, § 46A-701(A)(1), which requires that "a person designated as trustee accepts the trusteeship by substantially complying with a method of acceptance provided in the terms of the trust."

67. Zia Trust did not at any time file an Acceptance as Successor Trustee in the PQ-2010-00003 matter.

68. Zia Trust did not form a Trust Advisory Committee composed of the Grantor's children as expressly required in the Trust document. Zia Trust failed to consult with the required Trust Advisory Committee on any Trust matter whatsoever, despite the express language it was to do so.

69. Without lawful authority to do so, Zia Trust deeded to Mr. Millet the "Lot 2-B" real property that under the express terms of Trust B was irrevocable Trust property.

70. Zia Trust made a misrepresentation of fact, that it had authority as successor trustee to deed property from the Darnell Trust to Mr. Millet. As a professional company, Zia Trust knew this misrepresentation to be false as it knew it had not complied with either the terms of the

Trust or New Mexico law to effect its authority to take any action as Trustee of the Darnell Trust. The misrepresentation was made with the intent to deceive and induce Mr. Millet to act in reliance, which he did, and which resulted in a detriment to Plaintiffs as direct beneficiaries of the Darnell Trust. The mispresentation was further made to the Court in the PQ-2010-00003 by Darryl Millet that he had authority as Conservator to sell Darnell Trust property through a chain of title from Zia Trust.

71. Mr. Millet failed to complete the administration of Blair Darnell's estate and all assets, and created a cloud on the title of the Madame X painting.

72. Due directly to the probate fraud committed by Defendant Millet, Plaintiffs have suffered damages.

## COUNT II
## Breach of Fiduciary Duty

73. Plaintiffs incorporate the preceding paragraphs as if set forth herein in full.

74. Both Zia Trust and Mr. Millet owed a fiduciary duty to Blair & Casey Darnell, and to Plaintiffs as named beneficiaries of the Darnell Trust.

75. Under New Mexico's Statutory Scheme, a "trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with the Uniform Trust Code." NMSA 1978, § 46A-8-801.

76. Zia Trust, Inc. is a professional corporate trust organization founded in 2001. As a professional corporate trust organization, Zia Trust is imputed with knowledge of New Mexico's Uniform Trust Code.

77. New Mexico's Uniform Trust Code (NMSA 1978, §46A-1-105(B)) provides that "the terms of a trust prevail over any provision of the Uniform Trust Code, except.....[list 14 exceptions].

78. None of the 14 statutory exceptions permitted Zia Trust to deed property out of the Darnell Trust without first having complied with NMSA 1978, §46A-7-701, which it admittedly did not.

79. None of the 14 statutory exceptions permitted Zia Trust to deed from the irrevocable Trust B property that was expressly designated for beneficiaries of the Trust.

80. Despite the requirements of NMSA 1978, §46A-1-105(B)(9), Zia Trust did not respond to requests for information from Cliff Darnell, who was a qualified beneficiary of the irrevocable Trust B.

81. Without any justifiable reason, in a mere eight (8) days after being appointed as Successor Trustee, Zia Trust deeded away all real property held by the Darnell Trust without any compensation.

82. Despite the express language of Darnell Trust requiring that upon the death or incapacity of both of the Grantors (Casey and Blair Darnell), a Trust Advisory Committee composed of the Grantors' children was to be formed ("shall be formed"), Zia Trust did not form or consult with an Advisory Committee, which had the right to advise the Trustee on all matters concerning the Trust.

83. As Successor Trustee Defendant Zia Trust was required to ("shall") "give due regard to such advice" of the Trust Advisory Committee.

84. Zia Trust failed to administer the assets of the Darnell Trust with any input from the required Trust Advisory Committee.

85. Zia Trust failed to administer the trust in accordance with the Uniform Trust Code.

86. Zia Trust failed to administer the assets of the Darnell Trust in good faith.

87. As Conservator (and eventually as Successor Trustee), Mr. Millet failed to comply with the express terms of the Court's Order authorizing the sale of property. In doing so, he breached his fiduciary duty in selling the Lot 2-B property for an amount less than authorized to do so by the Court. Mr. Millet further breached his fiduciary duty by including Lot 2-A in the sale to Mr. Stromei for no consideration.

88. As Conservator (and eventually as Successor Trustee), Mr. Millet made false representations to the Court that he had authority to sell Trust property, based upon an invalid chain of title from Zia Trust.

89. As Conservator (and eventually as Successor Trustee), Mr. Millet made false representations to Plaintiffs, thereby inducing them to execute a Settlement Agreement in September 2016.

90. As Conservator (and eventually as Successor Trustee), Mr. Millet knew in September 2016 that he did not have valid authority to sell Trust property, and intentionally concealed this fact from Plaintiffs.

91. At some point in the PQ-2010-00003 matter, Mr. Millet was appointed as successor trustee of the Darnell Trust. At no time was Mr. Millet qualified as a corporate Trustee.

92. Despite the express language of Darnell Trust requiring that upon the death or incapacity of both of the Grantors (Casey and Blair Darnell), a Trust Advisory Committee composed of the Grantors' children was to be formed ("shall be formed"), Mr. Millet did not form or consult with an Advisory Committee, which had the right to advise him, as Trustee, on any matters concerning the Trust.

93. Mr. Millet failed to administer the assets of the Darnell Trust with any input from the required Trust Advisory Committee.

94. Mr. Millet failed to administer the trust in accordance with the Uniform Trust Code.

95. Mr. Millet failed to submit the highest best offer for the Darnell Trust property to the Court.

96. Mr. Millet failed to administer the assets of the Darnell Trust in good faith.

97. Mr. Millet failed to take action as required under NMSA 1978, §45-5-427 for preservation of Casey and Blair Darnell's estate plan.

98. Mr. Millet failed to complete the administration of Blair Darnell's estate and all assets

99. Due directly to Zia Trust and Mr. Millet's breaches of their fiduciary duties, Plaintiffs have suffered damages.

100. Plaintiffs' damages are a minimum of $2,800,000.00, the amount the Darnell Trust property was appraised at and sold for to the NM Department of Game and Fish in 2016.

101. Plaintiffs' damages include the value of the Madame X painting, and the cloud on the title of the painting due to Mr. Millet's activities and failures.

## COUNT III
### Collusion

102. Plaintiffs incorporate the preceding paragraphs as if set forth herein in full.

103. As Conservator, Darryl Millet requested that the Court appoint Zia Trust, Inc. as Successor (corporate) Trustee. At hearing on his Motion requesting the appointment, Mr. Millet stated to the Court that he wanted "a Trustee [he] could work with."

104. On the eighth business day after the Court entered its 8/2/2010 order appointing Zia Trust, Inc. as Successor (corporate) Trustee of the Darnell Trust, Zia Trust executed a

Warranty Deed deeding to Darryl W. Millet all of the Darnell Trust property - including irrevocable Trust property.

105. At hearing, Mr. Millet did not inform the Court that Defendant Zia Trust would be transferring to him all of the Darnell Trust property.

106. There was no rational basis for Zia Trust - nearly immediately upon being appointed as Successor Trustee - to have transferred all real property of the Darnell Trust to Darryl Millet in order for a reverse mortgage to be issued as Mr. Millet requested.

107. Defendants had reached an agreement between themselves for Defendant Zia Trust to transfer to Defendant Millet the real property asset of the Darnell Trust.

108. The agreement reached between Defendants was intended to deprive Plaintiffs of their interest in irrevocable Trust property.

109. Plaintiffs were deprived of their interest in Trust property.

110. Plaintiffs have suffered damages due to the Collusion between Defendants.

111. Plaintiffs' damages all occurred because the terms and conditions set forth in the Darnell Trust were either ignored or intentionally breached by the defendants acting alone and acting together.

112. Darryl Millet engaged in and orchestrated a fraudulent scheme to take many other Darnell assets, bank accounts were emptied and personal property along with equity holdings in other trusts and stocks were liquidated in difficult-to-trace all-cash transactions.

## COUNT IV
### Deceit

113. Plaintiffs incorporate the preceding paragraphs as if set forth herein in full.

114. Defendant Millet made a false statement of fact to the Court, knowingly or recklessly, that he requested Zia Trust be appointed as Successor (corporate) Trustee because he wanted "a Trustee [he] could work with."

115. This statement was made with the intention the Court act upon it, which it did, without knowing that the "working with" meant the corporate trustee would immediately deed real property from the Darnell Trust to Mr. Millet.

116. Based upon Mr. Millet's deceit, valuable Trust property was transferred to Mr. Millet's control and sold for a greatly undervalued amount.

117. Based upon Mr. Millet's deceit, irrevocable Trust property was transferred to Mr. Millet's control and sold for a greatly undervalued amount.

118. Plaintiffs have been damaged by Defendant Millet's deceit.

## JURY DEMAND

119. Plaintiffs hereby requests a jury trial in this case.

**WHEREFORE**, Plaintiffs respectfully request the Court:

A. Enter Judgment for Plaintiffs and against Defendants on all counts, and;

B. Award Plaintiffs damages in an amount to be proven at trial, and;

C. Require Zia Trust and Darryl W. Millet to restore the lost value of the unauthorized and undervalued sale of Darnell Trust property, and;

D. Require a full accounting of all monies received and expended by Darryl Millet in his capacity as Conservator and/or Successor Trustee in the PQ-2010-00003 matter; and,

E. Determine Defendant Darryl W. Millet is personally liable for losses to Plaintiffs as beneficiaries of the Darnell Trust resulting from the unauthorized and undervalued sale of Darnell Trust property and fraudulent transfer of Blair Darnell's property interest, and;

F. Determine Defendant Darryl W. Millet is personally liable for losses to Plaintiffs as direct beneficiaries from Blair Darnell resulting in clouding title to the Madame X painting, and;

G. Award Plaintiffs treble damages under NMSA 1978, § 36-2-17; and,

H. Enter such further relief as the Court deems just and appropriate.

Respectfully Submitted,
Lakins Law Firm, P.C.

_____
Charles N. Lakins, Esq.
PO Box 91357
Albuquerque, NM 87199
(505) 404-9377

## CERTIFICATE OF SERVICE

I, Charles N. Lakins, do hereby certify that on 5/7/2021, Plaintiff's *First Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____
Charles N. Lakins, Esq.