IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

CLIFF W. DARNELL, and MARY B. DARNELL,

    Plaintiffs,

vs.                                                                                 No. 1:21-CV-125

ZIA TRUST, INC. and DARRYL W. MILLET,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ZIA TRUST, INC.'S MOTION TO DISMISS

**THIS MATTER** comes before the Court following Defendant Zia Trust, Inc.'s Motion to Dismiss (Doc. 22) for failure to state a claim. In relevant part, Defendant Zia Trust ("Defendant" or "Zia Trust") argues that Plaintiffs' three claims are barred by: (1) Defendant's formal acceptance as successor trustee in 2011, (2) the New Mexico Trust Code's statute of limitations, and (3) a lack of causation between Defendant's conduct and Plaintiffs' purported damages. Having reviewed the pleadings and the applicable law, the Court finds that the Motion is not well taken and is, therefore, **DENIED**.

### BACKGROUND[1]

Four decades ago, Casey and Blair Darnell created a trust (the "Darnell Trust") for their children: Cliff and Mary Darnell ("Plaintiffs") and their two siblings. Its purpose was to, first, bequeath real property and business holdings to their children and, second, empower Darnell

---

[1] The Court accepts as true Plaintiffs' well-pleaded facts and views them in the light most favorable to Plaintiffs. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

1

family members to determine all future uses of the property through a majority vote. What made the Darnell Trust especially valuable was that it held highly coveted land along the Rio Grande River, which by 2009 had generated considerable interest from land developers.

Casey Darnell ("Casey") died in 2001. Blair Darnell ("Blair") became incapacitated in early 2010. This event sparked an involuntary conservatorship and guardianship proceeding[2] for Blair, during which the Second Judicial District Court of New Mexico (the "State District Court") assumed jurisdiction over the Darnell Trust property and appointed co-Defendant Darryl Millet ("Millet") as Blair's conservator and trustee of the Darnell Trust.[3] Later that year, the mounting cost of Blair's caretaking expenses and Millet's unpaid legal fees compelled Millet to file a request to appoint a successor trustee—"someone [he] could work with," as he stated at the hearing—to obtain a reverse mortgage. In turn, the Court appointed Defendant Zia Trust, Inc. ("Zia Trust") on August 2, 2010. Though the Darnell Trust required any successor trustee to "formally accept the designation or appointment," Zia Trust did not file an acceptance of appointment in the conservatorship matter. Ten days later, Zia Trust executed a warranty deed to Millet for "Lot 2" of the Darnell Trust, supposedly without consideration or a justifiable basis. A year later, Zia Trust filed a second deed to correct Blair's name on the deed.

Despite not being a corporate entity,[4] Millet succeeded Zia Trust as trustee of the Darnell Trust on February 14, 2011 and again assumed statutory duties to the trust's beneficiaries. In its

---

[2] Pursuant to Rule 201(a), (d) of the Federal Rules of Evidence, the Court hereby takes judicial notice of the underlying Conservatorship and Guardianship Proceeding, Cause No. D-202-PQ-201-00003.
[3] In the event that either Casey or Blair became incapacitated, Cliff Darnell was to serve as Co-Trustee, and if both Casey and Blair became incapacitated, the Darnell Trust states that both Cliff Darnell and NationsBank N.A. "shall serve as Co-Trustees." Furthermore, the Darnell Trust expressly provided that upon the death or incapacity of both of the Grantors, i.e. Casey and Blair, a Trust Advisory Committee composed of the Grantor's children shall be formed. The Committee had the right to advise the Trustee on all matters concerning the Trust. The Trustee was required to "give due regard to such advice but for good cause may decline to act in accordance therewith."
[4] Plaintiffs argue corporate status is required under Section 12.5 of the Darnell Trust, which the Court accepts as true for the sake of this motion to dismiss.

June 25, 2013 order, the State District Court granted permission for Millet to sell the "irrevocable" Lot 2–B property to a purchaser for $1.545 million and to give the purchaser an option to purchase Lot 2–A (where Blair resided at the time) for its appraised value at the time of sale, exercisable upon Blair's death. After receiving this permission, on October 15, 2013, Darryl Millet sold *both* Lot 2–A and Lot 2–B to the purchaser for $1,400,977 and a life estate for Blair. Plaintiffs allege that the sale was contrary to the June 25, 2013 order because the property sold for more than $150,000 less than the Court-approved amount and was also $300,000 less than an offer of which Mr. Millet was aware yet didn't inform the court. Curiously, no one conducted an appraisal for Lot 2–A—a highly valuable tract of property—and it was transferred prior to Blair's death on November 18, 2015 for no consideration whatsoever. Plaintiffs further claim the sale of Lot 2–B violated the express provisions of the Darnell Trust because Lot 2–B was *irrevocable* trust property. Not much time had passed before the purchaser listed the property for $3.5 million and ultimately sold it to the New Mexico State Game Commission in 2016 for $2.8 million. Finally, even though the Darnell Trust expressly required the trustee to form a "Trust Advisory Committee" comprised of grantor's children and consider their advice, neither Defendant discussed the disposition of the property at any point with Plaintiffs.

    An interesting turn of events precipitated the instant action. At some unspecified point, Cliff Darnell initiated a probate matter to finalize and correct matters from Blair's estate that Darryl Millet purportedly failed to perform while trustee. After Cliff Darnell served probate papers on Defendant Zia Trust as one of the parties involved with his mother's estate, Zia Trust through counsel sent a letter to Cliff Darnell on February 15, 2019. Despite the wording of the 2010 court order, the letter stated, Zia Trust had declined to act as successor trustee, never accepted appointment as successor trustee under the Darnell Trust as required by the New Mexico Trust

Code, and never administered any property of the Trust. Prior to receiving this letter, Plaintiffs were unaware that Zia Trust never accepted its trustee appointment, and that Zia Trust had transferred the Darnell Trust property without lawful authority—with Millet's full knowledge and complicity. According to Plaintiffs, these alleged facts give rise to their claims of probate fraud, breach of fiduciary duties, and collusion thereby resulting in the filing of the instant diversity suit on February 14, 2021.[5]

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of "failure to state a cause of action upon which relief can be granted" may be raised by motion to dismiss. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than a "sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). When applying this standard, the Court must "accept as true all well pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

---

[5] Plaintiffs concede in their Response to co-Defendant Darryl Millet's separate motion to dismiss that: "Zia Trust's *sole action* was deeding the Trust property (including irrevocable property) to Defendant Millet." Doc. 26 at 9 (emphasis added).

4

Defendant's motion to dismiss has three components. First, Defendant argues that by executing the deed to Millet, it accepted its designation as successor trustee, thereby foreclosing Plaintiffs' claim that Zia Trust acted without lawful authority. Second, Defendant contends that the Uniform Trust Code's five-year statute of limitations bars the instant action. Finally, Defendant asserts a lack of causation between Defendant's conduct and Plaintiffs' purported damages. The Court addresses each argument in turn.

### I.      Defendant's "formal acceptance" theory does not bar Plaintiffs' claims.

The Court begins its analysis by shining a spotlight on Defendant's interesting contradiction. In early 2019, Zia Trust through counsel sent a letter to Plaintiff Cliff Darnell stating:

> I note that Zia Trust, Inc. is not a party to the Estate probate proceedings. Also, despite the wording of that 2010 Court order, Zia Trust, Inc. declined to act as successor Trustee, never accepted appointment as successor Trustee under the Darnell Trust as required by the New Mexico Trust Cod, Sec. 46A-7-701 NMSA, and never took possession of or administered any property of that Trust.

Doc. 20–3. Two years have since passed, and now Zia Trust argues a contrary position. Because Zia Trust formally accepted the 2010 court order appointing it as successor trustee, Zia Trust now argues that the Court must dismiss all claims against Zia Trust based on the allegation that it deeded Darnell Trust property without lawful authority.

The question then becomes: what constitutes proper acceptance as successor trustee? To answer this question, the Court must look to both the New Mexico's Uniform Trust Code (the "UTC") and the language of the Darnell Trust. First, the UTC provides:

A. Except as otherwise provided in Subsection C of this section, a person designated as trustee accepts the trusteeship:

1. By substantially complying with a method of acceptance provided in the terms of the trust; or

> 2. If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by accepting delivery of the trust property, *exercising powers or performing duties as trustee or otherwise indicating acceptance of the trusteeship*.

NMSA 1978, § 46A-7-701(A) (emphasis added). In conjunction with the provision above, the Darnell Trust states: "[N]o designation or appointment of a corporate Trustee as Successor Trustee shall become effective until the corporate Trustee has *formally accepted* the designation or appointment." Art. 12, § 12.6 (emphasis added).

Combining these provisions, the parties disagree on the required method of acceptance. On one hand, Plaintiffs argue that, per § 46A-7-701(A)(1), Zia Trust should have substantially complied with the Darnell Trust language by filing a formal acceptance with the State District Court. Because it refrained from doing so, Zia Trust's subsequent transfer of Darnell Trust property to Millet was without authority and thus, a fraudulent misrepresentation. Conversely, Zia Trust asserts that the Darnell Trust language did not provide a specific method of acceptance, and nowhere in the Trust does it say that a successor trustee must *file* anything with the State District Court. Therefore, by deeding Lot 2–B to Millet, Zia Trust formally accepted its appointment by "exercising powers or performing duties as trustee or otherwise indicating acceptance of the trusteeship." NMSA 1978, § 46A-7-701(A)(2).

In sharp contrast with its current stance, Zia Trust in 2019 admitted through counsel that it had never accepted the designation of successor trustee, nor had it ever complied with NMSA § 46A-701(A)(1). This contradiction is not explained by Zia Trust. Additionally, the intersection of the UTC and the Darnell Trust language does not provide a clear and immediate answer to the question of how a successor trustee accepts its designation. In combining the UTC and Darnell Trust language, the factual inquiry becomes whether Zia Trust "substantially complied" with the Darnell Trust by "formally accepting" its appointment. It's plausible that Zia Trust should have

filed an acceptance with the State District Court, given the importance of a trustee's responsibilities juxtaposed with the broad requirement of "formal acceptance." In other words, executing a deed—or otherwise "acting" as trustee—may not qualify as formal acceptance. On the other hand, no one raised a concern when Zia Trust deeded the lot to Millet, so perhaps Zia Trust in fact became *de facto* trustee pursuant to NMSA § 46A-701(A)(2). Nevertheless, given Defendant's glaring contradictory positions and the slight ambiguity in Darnell Trust language, the Court finds it plausible that Zia Trust did not formally accept its trustee appointment. More evidence is likely needed to iron out this wrinkle.

    **II.**    **The statute of limitations does not bar Plaintiffs' claims.**

The next issue becomes the appropriate statute of limitations. Plaintiffs argue that New Mexico's Uniform Probate Code ("UPC") provides the right answer:

> If fraud has been perpetrated in connection with any proceeding or in any statement filed under the [Uniform] Probate Code or if fraud is used to avoid or circumvent the provisions or purposes of the code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud including restitution from any person (other than a bona fide purchaser) benefiting from the fraud, whether innocent or not. *Any proceeding must be commenced within two years after the discovery of the fraud*.

NMSA 1978, § 45-1-106(A) (emphasis added). Therefore, because Plaintiffs received the letter on February 15, 2019 detailing Zia Trust's purported fraud, Plaintiffs argue that filing this action on February 14, 2021 was within the two-year window. To the contrary, Defendant points to New Mexico's UTC:

> A.  A beneficiary shall not commence a proceeding against a trustee for breach of trust more than one year after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary of the time allowed for commencing a proceeding.

    B. A report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or representative knows of the potential claim or should have inquired into its existence.

    C. If Subsection A of this section does not apply, a judicial proceeding by a beneficiary against a trustee for breach of trust *must be commenced within five years* after the first to occur of:

        1. *The removal*, resignation or death *of the trustee*;

        2. The termination of the beneficiary's interest in the trust; or

        3. The termination of the trust.

NMSA § 46A-10-1005 (emphasis added). Because Zia Trust never sent Plaintiffs a report and because the State District Court officially removed Zia Trust as successor trustee on February 14, 2011, Defendant argues that Plaintiffs had until February 14, 2016 to file a proceeding against Zia for breach of trust. In the alternative, Defendant points to an injury-to-property-on-the-basis-of-fraud statute to suggest that Plaintiffs had four years from August 12, 2010 to file a claim. *See* NMSA § 37-1-4. Since Millet sold Lot 2–B on October 15, 2013, Defendant suggests October 15, 2017 as the very latest deadline for Plaintiffs to have filed their claims.

### A. The UTC statute of limitations attaches to Plaintiffs' clams here.

Plaintiffs cannot rely too heavily on the UTC to establish Zia Trust's liability, while arguing that the UTC's statute of limitations should not apply to their claims. The UTC's statute of limitations applies to "all judicial proceedings by a beneficiary against a trustee for breach of trust."[6] In theory, Plaintiffs could have raised the argument that Zia Trust could not have been removed as trustee if it never had the proper authority in the first place, thereby never initiating the UTC's statute of limitations. Nevertheless, the Court considers Zia Trust a functional trustee for the purposes of this limited inquiry, especially given (1) a New Mexico state court *officially*

---

[6] Though not officially adopted by New Mexico, the Comments to the UTC state "Subsection (c) is intended to provide some ultimate repose for actions against a trustee." UNIFORM TRUST CODE (2003) § 1005 cmt.

8

*removed* Zia Trust in February 2011 as successor trustee, (2) the extent to which Plaintiffs argue in their First Amended Complaint that Zia Trust owed Plaintiffs various duties while acting as successor trustee, and (3) that Zia Trust executed the Lot 2 warranty deed to Millet.

Relatedly, New Mexico law defines "breach of trust" as "[a] violation by a trustee of a duty the trustee owes to a beneficiary." NMSA § 46A-10-1001. As such, Plaintiffs' three claims (probate fraud, breach of fiduciary duty, and collusion) revolve around Zia Trust's alleged noncompliance with the UTC, the Darnell Trust, and duties as trustee—which ultimately inflicted harm upon the Trust's beneficiaries.[7] For these reasons, Plaintiffs' three claims are "breaches of trust" covered by UTC. Therefore, the five-year statute of limitations commenced when Zia Trust was removed as successor trustee in 2011.

### B. Nevertheless, New Mexico's "discovery rule" tolled the statute of limitations.

The UTC drafters noted in the comments to Section 1005: "[t]his section does not specifically provide that the statutes of limitations under this section are tolled for fraud or other misdeeds, the drafters preferring to leave the resolution of this question to other law of the state."[8] UNIFORM TRUST CODE (2003) § 1005 cmt. Conveniently, both parties cite to New Mexico's discovery rule, which "provides that 'the cause of action accrues when the plaintiff [1] discovers or [2] with reasonable diligence should have discovered that a claim exists.'" *Williams v. Stewart*,

---

[7] More specifically, in Count One, Plaintiffs allege Zia Trust didn't comply with the terms of the Darnell Trust and UTC in accepting its appointment. In Count Two, they allege Zia Trust failed to administer the trust in accordance with the Uniform Trust Code and failed to administer the Darnell's Trust's assets in good faith. In Count Three, they allege Defendants breached the terms and conditions set forth in the Darnell Trust acting alone and acting together.

[8] From this language, it becomes clear that "the limitations period of section 1005(c) can be tolled, and that other law of the applicable jurisdiction should determine what constitutes sufficient grounds for doing so." Alan Newman, *You Don't Know What You've Got Till It's Gone: Time Barred Claims Under the Uniform Trust Code*, 48 REAL PROPERTY, TRUST & ESTATE L.J. 459, 483 (2014).

9

112 P.3d 281 (N.M. Ct. App. 2005).[9] Importantly, the discovery rule applies across all claims listed in the New Mexico Annotated Code—including claims that fall under the UTC's "breach of trust" language. *Compare Sandel v. Sandel*, 463 P.3d 510, 519 (N.M. Ct. App. 2020) (applying discovery rule under [injury to property] NMSA § 37-1-4), *with Wilde v. Westland Dev. Co.*, 241 P.3d 628, 635 (N.M. Ct. App. 2010) (applying discovery rule under [UPC] NMSA 1978 § 54-1-106(A)).

Relying on the second half of the discovery rule, Defendant argues that Plaintiffs exercising reasonable diligence should have discovered the fact that Zia Trust did not file an acceptance with the state court at some point before February 15, 2019. The complaint does not allege that Plaintiffs didn't know that Zia Trust executed the deed, or that Defendant Millet sold Lot 2–B. Furthermore, Plaintiffs were named parties to: the Lot 2–B deed execution, the discharge of Zia Trust as trustee of the Darnell Trust, the appointment of Millet as "interim successor trustee," the signing of the settlement agreement,[10] and the proceeding that terminated the conservatorship and released Millet from trustee liability. While Defendant's position may seem convincing at first glance, the Court assumes in Plaintiffs' favor that in exercising reasonable diligence Plaintiffs did not discover that Zia Trust did not file an acceptance with the State District Court. *See Williams v. Stewart*, 112 P.3d 281, 287 (N.M. Ct. App. 2005) ("Historically, the courts of this state have characterized the

---

[9] *See also* NMSA § 37-1-7 ("In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved.").

[10] In 2016, both Plaintiffs and co-Defendant Millet—but not Defendant Zia Trust— signed a "Settlement Agreement and Mutual Release" (the "Agreement"). Leading up to the settlement, the Agreement reads, various family members disapproved of Millet's actions as conservator and trustee, some of which are described above. Thus, the Agreement represented "an amicable resolution to *all* disputes" regarding the Darnell Trust. Crucially, in September 2016 the State District Court attached the Agreement to its final order, which ultimately: (1) terminated Blair's conservatorship; (2) "approve[d] all actions by Mr. Millet in his capacity as conservator and trustee and deem[ed] them proper, including but not limited to: a) the *sale of all real property* owned [by the Darnell Trust]"; and (3) "released [Mr. Millet] from any and all liability for actions taken in his capacity as conservator and trustee." Doc. 21-1 at 3 (emphasis added).

application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn.").

In sum, while the UTC five-year statute of limitations attaches to Plaintiffs' claims, the discovery rule tolled such limitations. Because Plaintiffs discovered Zia Trust's alleged fraud on February 15, 2019 when it received Zia Trust's letter, filing suit on February 14, 2021 fell within the applicable statute of limitations.

### III.   Defendant's conduct plausibly caused Plaintiffs' alleged damages.

Finally, Defendant argues that Plaintiffs cannot establish Zia Trust caused the harm alleged by Plaintiffs in their First Amended Complaint. Importantly, the State District Court entered an order in the guardianship proceeding authorizing Millet to sell "Lot 2–B." As an independent superseding cause, the State District Court also ultimately entered an order approving all actions taken by Millet in his capacity as conservator and trustee, including the sale of the Darnell Trust property. In the alternative, Defendant blames Millet for everything in connection with the sale. He was the one, Defendant argues, that ultimately sold Lot 2–B for an amount less than authorized, and Lot 2–A for no consideration.

In Section I above, the Court found plausible that Zia Trust acted without authority when it deeded the Darnell Trust property to Millet. As a corollary, the Court finds that such alleged unlawful transfer plausibly enabled the conditions under which the Darnell property was disposed of at a loss to its beneficiaries. Whether the State District Court's actions operated as an independent superseding cause in the chain of causation is a factual question construed in Plaintiffs' favor at the motion to dismiss stage. In other words, the Court finds it plausible that Zia Trust's actions contributed "to bringing about [Plaintiffs'] injury . . . [and] is reasonably connected

11

as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.*, 118 P.3d 194 (N.M. Ct. App. 2005).

**IT IS THEREFORE SO ORDERED** that Defendant's Motion to Dismiss (Doc. 22) is hereby **DENIED** for reasons discussed in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE