IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLIFF W. DARNELL, and MARY B. DARNELL,

      Plaintiffs,

  vs.                                                                                        No. 1:21-CV-125

ZIA TRUST, INC. and DARRYL W. MILLET,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT DARRYL MILLET'S MOTION TO DISMISS AND REQUEST FOR ATTORNEY'S FEES**
**and**
**ORDER FOR SUPPORTING AFFIDAVIT AND TIMESHEET FOR REQUESTED FEES**

**THIS MATTER** comes before the Court following two motions to dismiss filed by both Defendants in the instant lawsuit. In a recent order (the "Order"), the Court denied the motion to dismiss filed by co-Defendant Zia Trust, Inc. ("Zia Trust") due to the plausibility of Zia Trust not having properly accepted its successor trustee position. *See* Doc. 38. A certain critical fact, however, distinguishes Darryl Millet's circumstance from Zia Trust's: Defendant Millet ("Millet" or "Defendant") was a party to a settlement agreement with Plaintiffs whereby Plaintiffs released Millet from "any and all liability" while trustee of Plaintiffs' trust. Zia Trust was not a party to said settlement agreement, so it cannot not claim the same protections. Thus, having reviewed the pleadings and the applicable law, the Court finds that this settlement agreement indeed bars the instant action against Millet and, therefore, does not reach the separate issues set forth in the motion. For the reasons stated below, Millet's Motion to Dismiss (Doc. 21)—including his request for attorney fees and costs—is hereby **GRANTED**.

1

**BACKGROUND**[1]

Four decades ago, Casey and Blair Darnell created a trust (the "Darnell Trust") for their children: Cliff and Mary Darnell ("Plaintiffs") and their two siblings. Its purpose was to, first, bequeath real property and business holdings to their children and, second, empower Darnell family members to determine all future uses of the property through a majority vote. What made the Darnell Trust especially valuable was that it held highly coveted land along the Rio Grande River, which by 2009 had generated considerable interest from land developers.

Casey died in 2001. Blair became incapacitated in early 2010, which sparked an involuntary conservatorship and guardianship proceeding[2] for Blair, during which the Second Judicial District Court of New Mexico (the "State District Court") assumed jurisdiction over the Darnell Trust property and appointed Millet as Blair's conservator and trustee of the Darnell Trust. Later that year, the mounting cost of Blair's caretaking expenses and Millet's unpaid legal fees compelled Millet to file a request to appoint a successor trustee—"someone [he] could work with," as he stated at the hearing—to obtain a reverse mortgage. In turn, the Court appointed Zia Trust on August 2, 2010. Though the Darnell Trust required successor trustees to "formally accept the designation or appointment," Zia Trust did not file an acceptance of appointment in the conservatorship matter. Ten days later, Zia Trust executed a warranty deed to Millet for "Lot 2" of the Darnell Trust, supposedly without consideration or a justifiable basis. A year later, Zia Trust filed a second deed to correct Blair's name on the deed.

Despite not being a corporate entity, Millet succeeded Zia Trust as trustee of the Darnell Trust on February 14, 2011 and again assumed statutory duties to the trust's beneficiaries. In an

---

[1] The Court accepts as true Plaintiffs' well-pleaded facts and views them in the light most favorable to Plaintiffs. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).
[2] Pursuant to Rule 201(a), (d) of the Federal Rules of Evidence, the Court hereby takes judicial notice of the underlying Conservatorship and Guardianship Proceeding, Cause No. D-202-PQ-201-00003.

order issued on June 25, 2013, the State District Court granted permission for Millet to sell the "irrevocable" Lot 2–B property to a purchaser for $1.545 million and to give the purchaser an option to purchase Lot 2–A (where Blair resided at the time) for its appraised value at the time of sale, exercisable upon Blair's death. After receiving this permission, on October 15, 2013, Darryl Millet sold *both* Lot 2–A and Lot 2–B to the purchaser for $1,400,977 and a life estate for Blair. Plaintiffs allege that the sale was contrary to the June 25, 2013 order because the property sold for more than $150,000 less than the Court-approved amount and was also $300,000 less than an offer of which Mr. Millet was aware yet didn't inform the court. Moreover, even though the Darnell Trust expressly required the trustee to form a "Trust Advisory Committee" comprised of grantor's children and consider their advice, neither Defendant discussed the disposition of the property at any point with Plaintiffs. Curiously, no one conducted an appraisal for Lot 2–A—a highly valuable tract of property—and it was transferred prior to Blair's death for no consideration whatsoever. Plaintiffs further claim it violated the express provisions of the Darnell Trust because Lot 2–B was *irrevocable* trust property. Not much time had passed before the purchaser listed the property for a $3.5 million and ultimately sold it to the New Mexico State Game Commission in 2016 for $2.8 million.

      Unrelated to the Darnell Trust, Blair Darnell owned a separate valuable asset: a "Madame X" painting by Antonio de la Gandara.[3] Blair loaned the painting in 2008 to Gibbs Gallery in Charleston, South Carolina, where it remains today. According to Plaintiffs, Blair was the only recognized owner of the painting at the time. Upon her death, however, Millet informed Gibb's Gallery that Blair's sister (Amy Bunting) owned a one-half interest in the painting, which Plaintiffs

---

[3] A "cutting edge" portrayal of New Orleans native Virginie Amélie Avegno, the painting was considered "a flamboyant creature of rare beauty" in Paris during the 19th century. Mac Daniels, *Madame X: Singer Sargent and Virginie Amélie Avegno*, MEDIUM.COM, https://medium.com/the-value-of-pencil-and-paper-in-the-digital-age/madame-x-6d3352854c88.

3

claim has "clouded its title." An ongoing dispute persists with Gibbs Gallery regarding the painting's ownership, and the gallery refuses to release the painting without a court order.

Herein lies the crux of the case. In 2016, Plaintiffs and Millet signed a "Settlement Agreement and Mutual Release" (the "Agreement"). The Agreement represented "an amicable resolution to *all* disputes" regarding the Darnell Trust. Crucially, in September 2016 the State District Court attached the Agreement to its final order, which ultimately: (1) terminated Blair's conservatorship; (2) "approve[d] all actions by Millet in his capacity as conservator and trustee and deem[ed] them proper, including but not limited to: a) the *sale of all real property* owned [by the Darnell Trust]"; and (3) "released [Millet] from any and all liability for actions taken in his capacity as conservator and trustee." Doc. 21-1 at 3 (emphasis added).

At some unspecified point, Cliff Darnell initiated a probate matter to finalize and correct matters from Blair's estate that Millet purportedly failed to perform while trustee. After Cliff Darnell served probate papers on Zia Trust as one of the parties involved with his mother's estate, Zia Trust through counsel responded with a letter on February 15, 2019. Despite the wording of the 2010 court order, the letter stated, Zia Trust declined to act as successor trustee, never accepted appointment as successor trustee under the Darnell Trust as required by the New Mexico Trust Code, and never administered the Trust's property. Prior to receiving the letter, Plaintiffs were unaware that Zia Trust never accepted its trustee appointment, and that Zia Trust had transferred the Darnell Trust property without lawful authority. Citing Millet's stray remark—that he wanted "someone [he] could work with"— during the State District Court proceeding, Plaintiffs allege Zia Trust did so with Millet's full knowledge and complicity.

According to Plaintiffs, this single letter permits them to circumvent their Settlement Agreement and assert four claims against Millet—for which they filed the instant suit on February

4

14, 2021. While not condoning the actions of Millet as trustee, the Court finds that Plaintiffs are bound by the terms of the Settlement Agreement and thus, rules in favor of Millet.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of "failure to state a cause of action upon which relief can be granted" may be raised by motion to dismiss. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than a "sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). When applying this standard, the Court must "accept as true all well pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). While Defendant's motion to dismiss has three components, the Court finds it necessary to address only the issues of res judicata and attorney fees.

### I. Plaintiffs' claims are barred by the doctrine of res judicata.

Following years of skirmishes regarding Millet's handling of the Darnell Trust, Plaintiffs and Millet negotiated the final terms of the Settlement Agreement in September 2016. As mentioned above, the Settlement Agreement had two critical effects: it (1) approved all actions by Millet in his capacity as conservator and trustee and deemed them proper (including the sale of all

5

real property), and (2) released Millet from "any and all liability for actions taken in his capacity as conservator and trustee." Doc. 21-1 at 3. Moreover, the Settlement Agreement was approved by an order issued by the State District Court. Yet, Plaintiffs have now filed suit against Defendant, alleging misdeeds taken in his capacity as conservator and trustee. Thus, the Court must determine whether the court approved Settlement Agreement bars the instant action.

### A. Law on Res Judicata

Res judicata (claim preclusion) "prevent[s] a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). On this topic, the Tenth Circuit has broadly opined:

> Res judicata is "central to the purpose for which civil courts have been established," namely "the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 . . . (1979). "[A] party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion." Geoffrey C. Hazard, *Res Nova in Res Judicata*, 44 S. CAL. L.REV. 1036, 1043 (1971). This bar protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153–54 . . .

*Park Lake Resources Ltd. Liability v. U.S. Dept. of Agr.*, 378 F.3d 1132, 1135 (10th Cir. 2004). In diversity cases such as this one, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits," which here is New Mexico. *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008). Moreover, claim preclusion only applies when the plaintiff has had a "full and fair opportunity" to litigate issues in a prior action. *Bank of Santa Fe v. Marcy Plaza Assocs.*, 40 P.3d 442 (N.M. 1987).

In New Mexico, "[a] party asserting res judicata or claim preclusion must establish that (1) there was a final judgement in an earlier action, (2) the earlier judgment was on the merits, (3) the

parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 342 P.3d 54, 57 (N.M. 2015). The Court addresses each element in turn.

### B. (i) Final Judgment (ii) On the Merits

On September 29, 2016, the State District Court entered an order in Blair's conservatorship proceeding, which: (1) terminated Blair's conservatorship; (2) "approve[d] all actions by Mr. Millet in his capacity as conservator and trustee and deem[ed] them proper, including but not limited to: a) the *sale of all real property* owned [by the Darnell Trust]"; and (3) "released [Mr. Millet] from any and all liability for actions taken in his capacity as conservator and trustee." Doc. 21-1 at 3 (emphasis added). It was not appealed and became final on October 29, 2016. *See* NMSA 1978 § 39-1-1; *Bank of Santa Fe v. Honey Boy Haven, Inc.*, 746 P.2d 1116, 1118 (N.M. 1987) ("An unreversed judgment is final between the parties as to all matters to which the judgment relates."); *Myers v. Olson*, 100 N.M. 745, 748–49 (holding that res judicata applies to an agreed order arising out of an agreement or stipulations) (citing *Bradford v. Bronner*, 665 F.2d 680, 682 (5th Cir. 1982)).

Therefore, the Court finds that the State District Court order was (1) a final judgment (2) on the merits of potential claims that Plaintiffs could have asserted against Millet.

### C. Identity of Parties

Plaintiffs concede that the same parties appear in both the State District Court case and the instant federal court case,[4] but nevertheless argue that the parties appear in different capacities. Citing no case precedent for support, Plaintiffs claim to assert the claims in the instant suit against Millet in his *individual*—not *fiduciary*—capacity, and that this distinction leads to the conclusion that the two separate court cases lack the same identity of parties. Doc. 26 at 6–7. Regardless, a

---

[4] The opening paragraph of the Settlement Agreement states: "The parties to this Agreement are Cliff Westfeldt Darnell, . . . Emily Darnell-Nunez . . . and Darryl W. Millet, Esq., individually."

7

simple recap of the parties' capacities reflects Plaintiffs' obfuscation of this issue. In both the State District Court case and the instant federal case, Millet was alleged to have mishandled Darnell Trust property. Likewise, Plaintiffs appeared both then and now as Darnell Trust beneficiaries, attempting to recover for Millet's alleged wrongdoing as conservator and trustee. Notably, Plaintiffs cite no authority suggesting that a trust beneficiary appearing in a conservatorship proceeding does not have the same "identity" when the same trust beneficiary is suing in his/her individual capacity the same trustee following the trust's termination. No matter how they characterize the situation, Plaintiffs cannot dispute that, as trust beneficiaries, they were interested parties in the conservatorship, that they participated vigorously in such conservatorship, and that they ultimately entered into the Settlement Agreement with Millet. Therefore, the Court finds that the parties are identical for the purposes of res judicata.

### D.  Identity of Cause of Action

The vanguard of Plaintiffs' argument hinges on the "difference" in both causes of action, which Plaintiffs separate into "subject matter" and "claims." The Court addresses each in turn.

#### i.  Subject Matter

Plaintiffs attempt to distinguish the subject matter in both proceedings. In one vein, Plaintiffs characterize the State District Court proceeding solely as a "statutory guardianship and conservatorship of an alleged incapacitated person" controlled by New Mexico's Probate Code—in which Millet acted in a fiduciary capacity as conservator and trustee. Further, Plaintiffs contend: "the probate fraud claim brought against Millet in this case was not a claim under the Probate Code to which the definition of 'claims' [under New Mexico's Probate Code] would apply." Instead, their claims here arise from Millet's actions that Plaintiffs learned after-the-fact which show that both Defendants acted in concert transferring and selling property without legal authority.

simple recap of the parties' capacities reflects Plaintiffs' obfuscation of this issue. In both the State District Court case and the instant federal case, Millet was alleged to have mishandled Darnell Trust property. Likewise, Plaintiffs appeared both then and now as Darnell Trust beneficiaries, attempting to recover for Millet's alleged wrongdoing as conservator and trustee. Notably, Plaintiffs cite no authority suggesting that a trust beneficiary appearing in a conservatorship proceeding does not have the same "identity" when the same trust beneficiary is suing in his/her individual capacity the same trustee following the trust's termination. No matter how they characterize the situation, Plaintiffs cannot dispute that, as trust beneficiaries, they were interested parties in the conservatorship, that they participated vigorously in such conservatorship, and that they ultimately entered into the Settlement Agreement with Millet. Therefore, the Court finds that the parties are identical for the purposes of res judicata.

### D.  Identity of Cause of Action

The vanguard of Plaintiffs' argument hinges on the "difference" in both causes of action, which Plaintiffs separate into "subject matter" and "claims." The Court addresses each in turn.

#### i.  Subject Matter

Plaintiffs attempt to distinguish the subject matter in both proceedings. In one vein, Plaintiffs characterize the State District Court proceeding solely as a "statutory guardianship and conservatorship of an alleged incapacitated person" controlled by New Mexico's Probate Code—in which Millet acted in a fiduciary capacity as conservator and trustee. Further, Plaintiffs contend: "the probate fraud claim brought against Millet in this case was not a claim under the Probate Code to which the definition of 'claims' [under New Mexico's Probate Code] would apply." Instead, their claims here arise from Millet's actions that Plaintiffs learned after-the-fact which show that both Defendants acted in concert transferring and selling property without legal authority.

The Court disagrees. The only genuine factor to which Plaintiffs cite to distinguish the subject matter is a fact Plaintiffs learned two years ago: that Zia Trust did not file an acceptance of its trustee designation with the State District Court, despite the trust language requiring "formal acceptance." In other words, Plaintiffs argue that their recent discovery of Zia Trust's material inaction allows Plaintiffs to re-litigate Millet's wrongdoing covered by the parties' Settlement Agreement, releasing Millet from *any* and *all* liability. Put simply, the fragility of this lone allegation—which hinders Zia Trust exceedingly more than Millet—is insufficient to frustrate the parties' 2016 agreement. Plaintiffs had a full and fair opportunity to bring their claims against Millet in the State District Court proceeding, and they chose not to do so. *See Bank of Santa Fe v. Marcy Plaza Assocs.*, 131 N.M. 537 (Ct. App. 2001). Now Plaintiffs are attempting to assert claims of alleged misdeeds by Millet while trustee of the Darnell Trust in this federal case when these claims are covered in the 2016 State District Court order approving the Settlement Agreement. Therefore, the subject matter in the two cases is the same.

  **ii.**  **Claims**

For res judicata purposes, claims are considered the same "cause of action" if they arise out of the same "transaction," or "series of connected transactions." *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 695 (1982). Whether the subsequent claim involves the same cause of action as the first requires the Court to determine whether the facts underlying both claims are "so interwoven as to constitute a single claim for purposes of res judicata." *Anaya v. City of Albuquerque*, 122 N.M. 326, 330 (1996). As such, Plaintiffs attempt to distinguish both causes of action in four unpersuasive ways.

First, Plaintiffs note that they never brought a claim for relief in the State District Court case. Filing a claim in that case, however, is not a pre-requisite to render the Settlement Agreement

9

binding on Plaintiffs and Millet. The very purpose of a settlement agreement is to achieve such an effect.

Second, Plaintiffs argue that the facts underlying the first and second proceedings would not form a convenient trial unit because Plaintiffs did not learn of the Defendants' purported "wrongdoing" until February 2019. *See Brooks Trucking Co. v. Bull Rogers, Inc.*, 139 N.M. 99 (Ct. App. 2006) (holding that res judicata did not bar subsequent lawsuit where the operative facts underlying the second lawsuit were not in existence when the first suit was brought); *Cruz v. FTS Construction, Inc.*, 140 N.M. 284 (Ct. App. 2006). As mentioned above, Plaintiffs' recent discovery of Zia Trust's material inaction does not somehow make the facts leading up to the Settlement Agreement any different than they are now. Instead, all potential claims in both proceedings revolve around Millet's alleged mishandling of the Darnell Trust, involving the same witnesses and body of evidence. Therefore, either the state case or the federal case would form a convenient trial unit.

Third, Plaintiffs contend that the Court would undermine their expectations by exempting Millet from probate fraud—when he knowingly sold irrevocable trust property in violation of court orders. This argument, however, mischaracterizes the facts in an attempt to circumvent the parties Settlement Agreement. While case law suggests that hidden facts unknown to one side of the agreement may suffice to overcome a waiver of liability, no such situation exists here. The fact that Zia Trust never filed a formal acceptance does not implicate Millet. Contrary to Plaintiffs' assertion, one who executes a release of liability of "all and any" claims should expect subsequent courts to uphold such an agreement.

Fourth, Plaintiffs argue the claims in the instant federal case were not actually and necessarily decided in the State District Court case. Plaintiffs maintain that Millet allegedly "lied"

to the State District Court and "lied" to the Plaintiffs about his authority to sell the property, which voids the parties' Settlement Agreement. The Court disagrees, having previously addressed this argument. The State District Court actually and necessarily decided all claims pertaining to Millet's potential liability while trustee, and Zia Trust's material inaction does not support the assertion that Millet "lied" about his authority to sell the property.

In other words, the misdeeds alleged to have been committed by Millet in this federal lawsuit occurred during Millet's tenure as trustee—the same timeframe leading to the parties' 2016 Agreement, a timeframe to which the Agreement explicitly applies. *Contra Brooks Trucking*, 139 N.M. at 104. Thus, the Court finds that the facts here are "so interwoven as to constitute a single claim for purposes of res judicata," rendering both causes of action the same. *Anaya*, 122 N.M. at 330; *Park Lake Resources Ltd. Liability v. U.S. Dept. of Agr.*, 378 F.3d 1132, 1135 (10th Cir. 2004).

## II.     Attorney Fees and Costs

Finally, pursuant to the Settlement Agreement, Millet requests compensation for his attorney's fees and costs incurred in bringing this Motion, an argument to which Plaintiffs did not respond.  In relevant part, paragraph six of the parties' Agreement states:

> ATTORNEY FEES/LOSER PAYS. In the even any dispute arises from the negotiation, execution, performance, enforcement or interpretation of this Agreement and the matter is presented to the Court for resolution, the prevailing Party shall be entitled to his or her attorney fees and costs from the losing Party. Otherwise, each party to this Agreement shall be responsible for his or her own attorney fees and expenses.

Doc. 21-1 at 8. In the instant suit, Plaintiffs have challenged the execution, performance, enforcement, and/or interpretation of this Settlement Agreement, and because the Court is granting Millet's Motion to Dismiss, Millet is the prevailing party and thus, is entitled to reasonable attorney fees and costs incurred in bringing this Motion.

**IT IS THEREFORE ORDERED** that, for the reasons set forth in this Memorandum Opinion and Order, Defendant Millet's Motion to Dismiss and Request for Attorney's Fees and Costs (Doc. 21) is hereby GRANTED.

**IT IS FURTHER ORDERED** that within fourteen (14) days of the filing of this Memorandum Opinion and Order, Defendant Millet or his attorney shall file with the Court an affidavit in support of the request for attorney fees and costs including the requested amounts and attorney time sheets or such other records in support of the requested award of attorney fees and costs. Plaintiffs, within fourteen (14) days of the filing of the affidavit for attorney fees and costs, may file their response objecting to the reasonableness of the requested attorney fees and costs.

**IT IS SO ORDERED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE